**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KAREN HABITZREUTHER,**

**Plaintiff,**          **5:14-cv-1229**
                        **(GLS/TWD)**

        **v.**

**CORNELL UNIVERSITY et al.,**

        **Defendants.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Holmberg, Galbraith Law Firm | DIRK A. GALBRAITH, ESQ. |
| P.O. Box 6599 | MICHAEL C. PEREHINEC, JR., |
| 200 East Buffalo Street | ESQ. |
| Suite 502 | |
| Ithaca, NY 14851 | |
| | |
| **FOR THE DEFENDANTS:** | |
| Office of University Counsel - Cornell | NELSON E. ROTH, ESQ. |
| Cornell University | WENDY E. TARLOW, ESQ. |
| 300 CCC Building | VALERIE L. DORN, ESQ. |
| Garden Avenue | |
| Ithaca, NY 14853 | |

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I.  Introduction

Plaintiff Karen Habitzreuther commenced this diversity action against

defendants Cornell University and Cornell University College of Veterinary Medicine, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel and detrimental reliance, and fraudulent misrepresentation.  (*See generally* Compl., Dkt. No. 1.) She seeks, among other things, $500,000 in damages.  (*Id.* at 15.) Pending is defendants' motion for judgment on the pleadings.  (Dkt. No. 14.)  For the reasons that follow, the motion is granted.

## II.  <u>Background</u>[1]

In September 2005, Habitzreuther enrolled in Cornell University's College of Veterinary Medicine.  (Compl. ¶¶ 16-17.)  Habitzreuther did not, however, arrive on Cornell's Ithaca, New York campus alone; she was

---

[1] "Generally, in determining a 12(b)(6) [or 12(c)] motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, . . . matters to which the court may take judicial notice[,]" and documents incorporated by reference in the complaint.  *Spence v. Senkowski*, No. 91-CV-955, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)); *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  Courts may also consider documents that are "integral" to the pleading, even if they are neither attached to, nor specifically incorporated by reference into, the pleading.  *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (noting that a document is "integral" to a complaint if the plaintiff had actual notice of the document and "*reli*[es] on the terms and effect of [that] document in drafting the complaint"). Here, the facts are drawn from Habitzreuther's complaint and presented in the light most favorable to her.  The court also considers a letter dated September 14, 2007, (Dkt. No. 1, Attach. 1), which is attached to Habitzreuther's complaint, and letters dated September 20, 2006, (Dkt. No. 14, Attach. 3 at 5-8), October 24, 2006, (Dkt. No. 14, Attach. 2 at 5-6), and January 8, 2009, (*id.* at 8-15), which are referenced throughout, and are integral to, the complaint, (Compl. ¶¶ 40-41, 48, 51, 54).

accompanied by her rescued German Shepherd, "Shandor," who is described by Habitzreuther as "a playful puppy who was very protective . . . a traditional Alpha Male," and by Cornell as a dog with "dominance-aggressive behavior" and a "dangerous nature." (*Id.* ¶¶ 18, 21; Dkt. No. 14, Attach. 3 at 7-8.) Habitzreuther completed her first year of study without incident, and, in July 2006, returned, again with Shandor, to the Cornell campus for her second academic year. (Compl. ¶¶ 19-20.) Prior to their return to Cornell, however, Shandor developed an ear infection, and, once back in Ithaca, Habitzreuther scheduled an appointment for him at the Community Practice Service Clinic (CPS). (*Id.* ¶¶ 22-24.) On July 11, 2006, Shandor was examined by a fourth-year student clinician, and, at some point during the exam, Shandor bit the student clinician. (*Id.* ¶¶ 24-26.)

As a result of this incident, the Faculty Administrative Board (FAB) informed Habitzreuther that it would conduct a hearing to determine whether she violated the school's Honor Code when she "failed to volunteer information about Shandor's dominance aggression problems" prior to Shandor's exam, and when she affirmatively represented to CPS staff that Shandor did not have any aggression issues, "notwithstanding

[her] knowledge that he had previously bitten other humans."[2] (*Id.* ¶ 37; Dkt. No. 14, Attach. 3 at 5.) After the hearing, the FAB concluded that Habitzreuther violated the Honor Code and recommended that she be suspended for two years. (Compl. ¶¶ 40-41; Dkt. No. 14, Attach. 3 at 5-8.) Habitzreuther was informed of the FAB's decision by letters dated September 20 and October 24, 2006. (Dkt. No. 14, Attach. 2 at 5-6; Dkt. No. 14, Attach. 3 at 5-8.) Of note, the September 20 letter stated that the FAB would recommend to the Dean that Habitzreuther "be required to seek approval from the [FAB] prior to being permitted to re-enroll at" Cornell, and that, if the Dean accepted that recommendation, "the [FAB] will be most interested . . . in seeing compelling evidence that [Habitzreuther] understand[s] the significance of [her] actions on July 11, 2006," and appreciates "how [her] judgment as an aspiring professional was impaired." (Dkt. No. 14, Attach. 3 at 8.) In the October 24 letter, Habitzreuther was informed that the Dean accepted the FAB's recommendation, and that, prior to her reinstatement, she "will be required to obtain the approval of

---

[2] Prior to the FAB's involvement, Habitzreuther was made a defendant in proceedings before the Student Administrative Board, but because of certain procedural errors during those proceedings, Habitzreuther was given the option of a new hearing before the Student Administrative Board or a *de novo* hearing before the FAB; Habitzreuther chose the latter. (Compl. ¶¶ 34-39.)

4

the [FAB] . . . [and] to repeat Foundation Course IV and VIId." (Dkt. No. 14, Attach. 2 at 5.)  This letter also informed her that she would be permitted to seek to have her case for readmission heard after one year. (*Id.*; Compl. ¶ 43.)

After the first year of her suspension, Habitzreuther sought readmission for the 2007-2008 academic year, which the FAB unanimously approved.  (Compl. ¶ 44; Dkt. No. 1, Attach. 1 at 2-3.)  Habitzreuther was informed of the FAB's decision by a letter dated September 14, 2007. (Compl. ¶ 44; Dkt. No. 1, Attach. 1 at 2-3.)  This letter, however, made it clear that Habitzreuther's return was "conditional" and further stated that "the FAB will not make a final decision until next year." (Dkt. No. 1, Attach. 1 at 2.)  The September 14, 2007 letter went on to state that, when the FAB makes its final decision, it would "consider the same factors considered this year, and will take into account the information that will be available from this year as well," in order to "determine[] whether [Habitzreuther] fully complied with and satisfied the terms set forth . . . in the[] letter dated September 20, 2006." (*Id.*)  This letter also reiterated that Habitzreuther would be required to retake Foundation Courses IV and VII, and "strongly recommend[ed] that [she] continue with . . . counseling." (*Id.*)

Habitzreuther then returned to Cornell in September 2007 and claims to have "met successfully every academic requirement" and "fully complied with and satisfied all terms set forth in [d]efendants' letter of September 20, 2006." (Compl. ¶¶ 47-48.) On December 1 and 19, 2008, Habitzreuther again appeared before the FAB, when, much to her surprise, "the accidental biting incident w[as] re-examined *de novo*." (Compl. ¶¶ 51-52.) After those proceedings, on January 8, 2009, Habitzreuther was informed that the FAB would not grant her approval to return permanently, and she was, therefore, expelled from Cornell. (*Id.* ¶ 54; Dkt. No. 14, Attach. 2 at 8-15.)

Thereafter, Habitzreuther left Ithaca, and lost three years of credits from Cornell. (Compl. ¶ 56.) Two years later, she earned admission to other colleges of veterinary medicine. (*Id.* ¶ 57.) As a result of Cornell's actions, Habitzreuther claims to have suffered damages in the amount of $500,000. (*Id.* ¶ 58, at 15.) Thus, Habitzreuther commenced this action on October 8, 2014. (Compl.) Defendants then interposed an answer, (Dkt. No. 11), and, soon thereafter, filed the now-pending motion for judgment on the pleadings, (Dkt. No. 14).

### III.  **Standard of Review**

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 234 (2d Cir. 2012) (internal quotation marks and citation omitted). For a full discussion of that standard, the court refers the parties to its decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir. 2015).

## IV. <u>Discussion</u>

Defendants seek dismissal of Habitzreuther's complaint on the ground that the complaint should have been brought, if at all, pursuant to Article 78 of New York's Civil Practice Law and Rules in New York State court, and because Article 78 proceedings are governed by a four-month statute of limitations, her claims are untimely. (Dkt. No. 14, Attach. 1 at 14-17, 21.) Alternatively, defendants seek dismissal of Habitzreuther's first, second, and third causes of action—breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel, respectively—for failure to state a claim. (*Id.* at 11-14, 18-20.) Habitzreuther opposes defendants' motion. (Dkt. No. 15.) Defendants'

arguments, and Habitzreuther's responses, are addressed below.

## A.  <u>Article 78 Proceeding</u>

First, defendants contend that, at its essence, Habitzreuther's complaint is a challenge to Cornell's academic decision to expel her, which is a decision that is reviewable only pursuant to N.Y. C.P.L.R. Article 78, which has a four-month statute of limitations.  (Dkt. No 14, Attach. 1 at 14-17, 21.)  Habitzreuther responds that she has properly pleaded a breach of contract claim that is appropriately adjudicated in this court.  (Dkt. No. 15 at 7-9.)  Although not without hesitation, the court declines to dismiss Habitzreuther's claims on this basis.

Article 78 provides procedures for parties seeking "[r]elief previously obtained by writs of certiorari to review, mandamus or prohibition."  N.Y. C.P.L.R. § 7801.  "[P]roceedings under [A]rticle 78 are typically the avenue for parties challenging administrative actions by governmental agencies or by the decisionmaking bodies of private entities."  *Clarke v. Trs. of Columbia Univ.*, No. 95 Civ. 10627, 1996 WL 609271, at *2 (S.D.N.Y. Oct. 23, 1996).  The New York Court of Appeals has stated that "[c]ourts retain a 'restricted role' in dealing with and reviewing controversies involving colleges and universities" and that "CPLR [A]rticle 78 proceedings are the

8

appropriate vehicle" for such controversies. *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 92 (1999). Under New York law, when a complaint alleges that a school breached its agreement with a student by failing to provide an effective education, the complaint must be dismissed because it asserts an impermissible claim for educational malpractice. *See Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206-07 (S.D.N.Y. 1998). New York's refusal to recognize an educational malpractice cause of action is based on "courts' reluctance to make judgments as to the validity of broad educational policies" or "sit in review of the day-to-day implementation of these policies." *Ansari v. N.Y. Univ.*, No. 96 CIV. 5280, 1997 WL 257473, at *2 (S.D.N.Y. May 16, 1997) (internal quotation marks and citations omitted). "Thus, the review of a variety of academic decisions at private educational institutions has been limited to Article 78 proceedings." *Id.* Notably, decisions regarding dismissals, explusions, and suspensions are generally reviewed in Article 78 proceedings. *See id.*

However, a plaintiff may assert a cause of action for breach of contract against a university in certain circumstances. New York courts have acknowledged that "'[w]hen a student is admitted to a university, an implied contract arises between the parties which states that if the student

complies with the terms prescribed by the university, he will obtain the degree he seeks.'" *Baldridge v. State of N.Y.*, 293 A.D.2d 941, 942 (3d Dep't 2002) (quoting *Vought v Teachers Coll., Columbia Univ.*, 127 A.D.2d 654, 654-55 (2d Dep't 1987)). "The rights and obligations of the parties to this contractual relationship flow from the university's bulletins, circulars and regulations made available to the student, [which] become a part of this contract." *Id.* at 943 (internal quotation marks and citation omitted). "[T]o state a valid claim for a breach of contract, a plaintiff must state when and how the defendant breached the specific contractual promise." *Radin v. Albert Einstein Coll. of Medicine of Yeshiva Univ.*, No. 04 Civ. 704, 2005 WL 1214281, at *10 (S.D.N.Y. May 20, 2005); *see Ward v. N.Y. Univ.*, No. 99 CIV. 8733, 2000 WL 1448641, at *5 (S.D.N.Y. Sept. 28, 2000) ("[B]ald assertions and conclusory allegations claiming that the University's rules or procedures were not followed, do not state a valid claim.").

Thus, in order for a breach of contract action to survive, a plaintiff must identify a specific contract, specified services or promises made, and the university's failure to provide those services or keep those promises. *See Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 92 (2d Dep't 1982) ("[I]f the contract with the school were to provide for certain specified services, such

10

as for example, a designated number of hours of instruction, and the school failed to meet its obligation, then a contract action with appropriate consequential damages might be viable."); *see also Ansari*, 1997 WL 257473, at *3 (refusing to dismiss a breach of contract claim because the allegations that defendants promised state-of-the-art facilities, faculty tutor-advisors, and other identified promises were allegations of promises for specified services). Finally, courts also look to the relief sought by the plaintiff, and where the plaintiff seeks monetary damages, rather than to prohibit or compel an action, a breach of contract action may be cognizable. *See Gally*, 22 F. Supp. 2d at 205-06 (citing cases).

Here, Habitzreuther claims that, "[a]s an active enrolled student," she and defendants were parties to a contract. (Compl. ¶ 60.) She also claims that the September 14, 2007 letter, which permitted her to return to Cornell after one year of her suspension, created a contract between herself and defendants. (*Id.* ¶ 61.) Further, Habitzreuther claims that, by returning to Ithaca, repeating certain courses, and continuing with counseling, she performed her obligations under the contract, and, when defendants expelled her, they breached the contract, causing her damages. (*Id.* ¶¶ 62-66.)

This is, to put it mildly, inventive pleading.  It is fairly clear that what Habitzreuther really challenges is defendants' decision to expel her, which, as noted above, is a decision that is generally reviewable only in an Article 78 proceeding.  *See Ansari*, 1997 WL 257473, at *3.  She has, however, pointed to a specific "contract"—the September 14, 2007 letter[3]—identified specific services that were promised—her ability to return to Cornell from her suspension unconditionally—and claimed that defendants failed to perform their end of the bargain when they expelled her, which was a breach of their contract, not a violation of defendants' own "rules or procedures."  (Compl. ¶¶ 59-66); *Ward*, 2000 WL 1448641, at *5.  Habitzreuther also seeks money damages as a result of the alleged breach.  (*Id.* ¶ 66, at 15.)

Accordingly, the court declines to dismiss Habitzreuther's complaint on the basis that the *only* forum in which she could have adjudicated her claims was an Article 78 proceeding in New York State court—although it is pellucid that an Article 78 proceeding would have been a far more appropriate setting, as the decision to expel a student is precisely the sort

---

[3] It is unclear from Habitzreuther's complaint whether the "contract" is the implied-in-fact contract that exists between a student and her university, the terms of which were supplemented by the September 14, 2007 letter, or whether the September 14, 2007 letter alone constitutes the contract.  (Compl. ¶¶ 60-61.)

of "day-to-day implementation of [a university's] policies" of which New York courts are loath to "sit in review." *Ansari*, 1997 WL 257473, at *2 (internal quotation marks and citations omitted).  As discussed further below, however, Habitzreuther's creative pleading only gets her so far, as her breach of contract claim fails on the merits.

**B.    Breach of Contract**

Next, defendants seek dismissal of Habitzreuther's breach of contract claim, arguing that her allegations that defendants breached a contract are contradicted by the letters attached and integral to the complaint, and, therefore, should not be accepted as true.  (Dkt. No. 14, Attach. 1 at 11-14.)  Habitzreuther counters that, at this stage, she has alleged sufficient facts that permit the court to draw the reasonable inference that defendants are liable for the misconduct alleged.  (Dkt. No. 15 at 4-6.)  The court agrees with defendants.

To survive a motion to dismiss for a breach of contract claim under New York law, the complaint must allege facts which show: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375

F.3d 168, 177 (2d Cir. 2004).  Conclusory allegations that a defendant breached an agreement are insufficient to support a breach of contract claim.  *See Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) (collecting cases).  Additionally, "[i]n a contract action, the court's general objective should be to give effect to the intentions of the parties in entering into the agreements."  *Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990) (citations omitted).  "Under New York law, . . . if a contract is unambiguous on its face, its proper construction is a question of law."  *Id.*

Here, assuming that the September 14, 2007 letter is a contract—and the court is not convinced that it is[4]—the terms of the agreement itself, along with the terms of the October 20, 2006 letter, which are expressly incorporated into the September 14, 2007 letter, contradict Habitzreuther's contentions that she fully performed and that defendants breached.  The unambiguous terms of the agreement provided that, in order for Habitzreuther to return to Cornell permanently, certain conditions needed to be satisfied.  (Dkt. No. 1, Attach. 1 at 2; Dkt. No. 14, Attach. 3 at

---

[4] Aside from approaching the notion with general skepticism, defendants do not argue, head on, that the September 14, 2007 letter is not a contract.  Because their motion may be granted on other grounds, the court need not devote much time to this point.

8.)  Most notably, Habitzreuther was required to obtain the FAB's approval *before* she would be permitted to return to Cornell without further conditions—a condition that was expressly stated in both the October 20, 2006 and September 14, 2007 letters.  (Dkt. No. 1, Attach. 1 at 2; Dkt. No. 14, Attach. 3 at 8.)  That Habitzreuther purports to have been ignorant of this clear and unambiguous condition is of no moment.[5]

Although Habitzreuther conclusorily alleges that she "fully complied with and satisfied all terms set forth in [d]efendants' letter[s]," (Compl. ¶ 48), the court need not accept that allegation as true, as it is clear from the documentary evidence integral to the complaint that Habitzreuther did not obtain the FAB's approval, (Dkt. No. 14, Attach. 2 at 8-15)—a specific condition precedent to unconditional readmittance.  *See Gene Codes Forensics, Inc. v. City of N.Y.*, No. 10 Civ. 1641, 2012 WL 1506166, at *3 (S.D.N.Y. Apr. 26, 2012) ("At th[e motion to dismiss] stage in a breach of

_____

[5] Specifically, Habitzreuther alleges that she was "[n]ever advised that she had to fulfill any additional conditions once she was permitted to return to Cornell after her two-year suspension was shortened," that defendants "led [her] to believe that the [FAB] was sufficiently satisfied with [her] remorse, and that [she] needed only to complete all academic requirements and avoid further violations of the Honor Code in order to remain and graduate from Cornell," and that she "was never informed that she would be required to have subsequent appearances before the [FAB] . . . where the accidental biting incident would be re-examined." (Compl. ¶¶ 49-51.)  These allegations, however, are all belied by the very documents on which she relies.  (Dkt. No. 1, Attach. 1 at 2; Dkt. No. 14, Attach. 3 at 8.)  From the very first letter that she received, she was informed that her return would be conditional on final FAB approval.

15

contract action, if the allegations 'are flatly contradicted by documentary evidence, they are not presumed to be true, or even accorded favorable inference.'" (quoting *Taussig v. Clipper Grp., L.P.*, 13 A.D.3d 166, 167 (1st Dep't 2004))). Without the FAB's approval, a condition was left unsatisfied, and, therefore, defendants did not breach the contract when they expelled her. Accordingly, Habitzreuther's breach of contract claim is dismissed.

### C.   Breach of Implied Covenant of Good Faith and Fair Dealing

Defendants also seek dismissal of Habitzreuther's second cause of action, breach of the implied covenant of good faith and fair dealing. (Dkt. No. 14, Attach. 1 at 18-19.) Although Habitzreuther opposes dismissal of this claim, (Dkt. No.15 at 9-10), the court agrees with defendants, and little discussion is necessary.

"New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). "Typically, raising both [breach of contract and breach of the implied covenant of good faith and fair dealing] in a single complaint is redundant, and courts confronted with such complaints under New York law regularly

dismiss any freestanding claim for breach of the covenant of fair dealing where the claims derive from the same set of facts." *Ret. Bd. of Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of N.Y. Melon*, No. 11 Civ. 5459, 2014 WL 3858469, at *3 (S.D.N.Y. July 30, 2014) (internal quotation marks and citations omitted).

Here, Habitzreuther's claim for breach of the implied covenant of good faith and fair dealing is based on the exact same facts as her breach of contract claim. (*Compare* Compl. ¶¶ 59-66, *with id.* ¶¶ 67-72.) Accordingly, Habitzreuther's claim for breach of the implied covenant of good faith and fair dealing is dismissed.

### D.   Promissory Estoppel

Defendants also move to dismiss Habitzreuther's claim for promissory estoppel, again arguing that her allegations are contradicted by the documents on which she relies. (Dkt. No. 14, Attach. 1 at 19-20.) For similar reasons as discussed above, the court agrees.

Under New York law, to state a claim for promissory estoppel, a plaintiff must allege: "1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir.

2000). "A promise that is too vague or too indefinite is not actionable under a theory of promissory estoppel"; the alleged promise must be clear and unambiguous. *Bd. of Trs. ex rel. Gen. Ret. Sys. of Detroit v. BNY Mellon*, *N.A.*, No. 11 Civ. 6345, 2012 WL 3930112, at *6 (S.D.N.Y. Sept. 10, 2012).

Here, Habitzreuther has failed to plead the first element. In her complaint, she alleges that defendants "clearly and unambiguously informed [her] that she would be allowed to return from suspension in 2007 rather than in 2008," and that Cornell promised her that she would return "'unconditionally.'" (Compl. ¶¶ 75-76.) Again, these alleged promises are flatly contradicted by the written agreement, which expressly states that Habitzreuther's return to Cornell for the Fall 2007 semester was conditional. (Dkt. No. 1, Attach. 1 at 2; Dkt. No. 14, Attach. 3 at 8.) Moreover, even the conditional promise to readmit Habitzreuther only in the event that the FAB was satisfied that she "underst[ood] the significance of [her] actions on July 11, 2006," and appreciated "how [her] judgment as an aspiring professional was impaired," (Dkt. No. 14, Attach. 3 at 8), is too vague and ambiguous to satisfy the first element of a promissory estoppel claim. *See Sanyo Elec., Inc. v. Pinros & Gar Corp.*, 174 A.D.2d 452, 453

(1st Dep't 1991) (finding neither a clear and unambiguous promise nor reasonable reliance thereon where "the alleged promise was not only vague and indefinite but . . . was completely contradicted shortly thereafter by written representations").[6]  Accordingly, Habitzreuther's claim for promissory estoppel is also dismissed.

## E.    Fraudulent Misrepresentation

Although for reasons the court cannot understand, defendants did not specifically move to dismiss Habitzreuther's fourth cause of action for fraudulent misrepresentation.  Nevertheless, because defendants seek to dismiss Habitzreuther's complaint "in its entirety," (Dkt. No. 14 at 1), and because defendants' arguments in support of dismissal of Habitzreuther's other causes of action are applicable to her claim for fraudulent misrepresentation, this claim may also be dismissed.

"To state a claim for fraudulent misrepresentation under New York law 'a plaintiff must show that (1) the defendant made a material false

---

[6] Alternatively, assuming that the September 14, 2007 letter is an enforceable agreement, Habitzreuther's promissory estoppel claim also fails because it is duplicative of her breach of contract claim.  "A promissory estoppel claim is duplicative of a breach of contract claim unless the plaintiff alleges that the defendant had a duty independent from any arising out of the contract."  *Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410, 2014 WL 4677120, at *11 (E.D.N.Y. Sept. 19, 2014) (internal quotation marks and citations omitted).  Here, Habitzreuther has failed to allege any independent duty; her claim is entirely based on the duties that arose under the written agreement.

representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'"  *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 186-87 (2d Cir. 2004) (quoting *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995)).  Additionally, fraud must be pleaded with particularity, Fed. R. Civ. P. 9(b); N.Y. C.P.L.R. § 3016(b), which requires that the plaintiff "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996) (citations omitted).

Here, Habitzreuther claims that defendants "falsely misrepresented and concealed material facts about [her] possible expulsion," falsely misrepresented that she would "now join the Class of 2010," failed to reveal to her that her "suspension could be modified to a permanent explusion," and never "notified [her] that expulsion was an option for the alleged violation of the Honor Code."  (Compl. ¶¶ 84-87.)  Although the court acknowledges that it is beating a dead horse, the fatal flaw with

Habitzreuther's fraudulent misrepresentation claim is that in the October 20, 2006, October 24, 2006, and September 14, 2007 letters—upon which she relies in her complaint—defendants informed her that her return was conditional on obtaining the FAB's approval. (Dkt. No. 1, Attach. 1 at 2; Dkt. No. 14, Attach. 2 at 5; Dkt. No 14, Attach. 3 at 8.) Implicit in that condition is the notion that, if Habitzreuther did not obtain the FAB's approval for readmittance, she would not be permitted to return—even after a two-year suspension. Accordingly, because Habitzreuther's allegations directly contradict the letters that she has incorporated into the complaint, she has failed to plausibly plead the first element of this cause of action, and her fraudulent misrepresentation claim must be dismissed.

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Habitzreuther's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

21

Decision and Order to the parties.

**IT IS SO ORDERED.**

August 25, 2015
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court